IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CASCADIA WILDLANDS, | ) | |
| | ) | No. 80644-1-I |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| WASHINGTON DEPARTMENT OF | ) | UNPUBLISHED OPINION |
| FISH AND WILDLIFE, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RESOURCES COALITION, INC., | ) | |
| | ) | |
| Intervenor. | ) | |
| | ) | |

KORSMO, J. — Because the regulation under challenge has been replaced with one that affords petitioner the relief it was seeking, this appeal is moot.

PROCEDURAL HISTORY

The Department of Fish and Wildlife (DFW) is tasked with both protecting fish in Washington waters as well as regulating construction activities occurring in our

waterways. RCW 77.04.012; chapter 77.55 RCW. The typical method of regulating the latter category of activities is via a hydraulic permit application (HPA).[1]

DFW's waterway protection duties include regulation of prospecting and mining, with most mining activities subject to the HPA process. Due to 1997 legislation, small scale prospecting was exempted from the permitting process and DFW waived permits for such operations by describing permissible permit-free operations in the Gold and Fish pamphlet. LAWS OF 1997, ch. 415, § 21; RCW 77.55.091. In 2014, the implementing regulation was amended to exclude "small motorized equipment" from the HPA requirement by including it in the Gold and Fish pamphlet. Former WAC 220-660-300(1) (2015).

Appellant Cascadia Wildlands, an Oregon non-profit corporation whose members enjoy use of regional wilderness lands and river systems, brought a declaratory judgment action to invalidate the new regulation. Cascadia contended that suction dredging required an HPA. A prospector's organization, Resources Coalition, was permitted to intervene. Both Cascadia and DFW ultimately moved for summary judgment. The court denied Cascadia's motion and granted DFW's, ruling that the agency had the statutory

---

[1] "'Hydraulic project' means the construction or performance of work that will use, divert, obstruct, or change the natural flow or bed of any of the salt or fresh waters of the state." RCW 77.55.011(11).

authority to issue the change. Cascadia then dismissed its remaining claims and appealed to this court.

The matter was administratively transferred from Division Two to Division One. This court requested and received supplemental briefing on the issue of mootness. A panel then heard oral argument of the case.

ANALYSIS

An appeal is moot when an appellate court cannot provide effective relief. *In re Det. of LaBelle*, 107 Wn.2d 196, 200, 728 P.2d 138 (1986). In some instances, the public interest will justify consideration of an otherwise moot appeal. *Id.* We do not believe this is one of those instances.

At issue is an interpretation of the authority given DFW to regulate small scale prospecting and mining without a permit. RCW 77.55.091(1) provides:

> Small scale prospecting and mining shall not require a permit under this chapter if the prospecting is conducted in accordance with rules established by the department.

In turn, "'Small scale prospecting and mining' means the use of only the following methods: Pans; nonmotorized sluice boxes; concentrators; and minirocker boxes for the discovery and recovery of minerals." RCW 77.55.011(21). DFW was directed to clarify which small scale methods required a permit and to use the Gold and Fish pamphlet to minimize the number of specific provisions of a written permit. RCW 77.55.091(3).

Using this authority, DFW in 2014 issued the following regulation:

> Mineral prospecting projects excavate, process, or classify aggregate using hand-held mineral prospecting tools and mineral prospecting equipment. When prospectors locate valuable minerals through prospecting, they may attempt to recover larger quantities of the minerals using a variety of small motorized equipment, including suction dredges, high bankers, and heavy equipment. <u>The rules in this section apply to using hand-held mineral prospecting tools and small motorized equipment</u>.

Former WAC 220-660-300(1) (2015) (emphasis supplied).

The underscored language provided the impetus for this case. Cascadia argued that the definition of "small scale prospecting" and RCW 77.55.091(1) prohibited DFW from allowing the use of any motorized equipment in small scale prospecting, while DFW believed its authority to determine when individual permits are required allowed it to regulate some motorized activity via the pamphlet.

Subsequently, the regulation was amended and a new regulation adopted to govern motorized equipment. WAC 220-660-300(1) was rewritten to govern only "hand-held mineral prospecting tools and a variety of small mineral prospecting equipment." It now concludes with the following sentences: "Suction dredging is not authorized in this section. See WAC 220-660-305 for suction dredging rules." The definition of "suction dredge" was expanded to include "any motorized or nonmotorized device" that operates as a vacuum. WAC 220-660-030(140) (2020). All suction dredging, which includes both motorized and nonmotorized equipment, is governed by WAC 220-660-305(1)

(2020). A permit now is required to engage in suction dredging. WAC 220-660-305(3) (2020).[2]

As it now stands, DFW is requiring an individual permit for any small scale prospecting operation that uses motorized equipment. *Id.* The controversy between Cascadia and DFW is at an end. Whether DFW still believes it can use the permit-waiver process of RCW 77.55.091(3) in conjunction with its regulatory authority over fresh water construction projections, it no longer is attempting to do so. There simply is no relief that can be granted and no reason to believe this court need address the now-disregarded theory supporting the former regulation.

This case is moot. The appeal is dismissed.

_____
Korsmo, J.

WE CONCUR:

_____        _____
Hazelrigg, J.                                                    Verellen, J.

---

[2] Effective June 11, 2020, hydraulic permit applicants seeking to use siphoning equipment must also prove to the department of ecology that the project complies with federal clean water standards. LAWS OF 2020, chapter 10, §§ 2, 4.